UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SCOTT MONROE | ) | 3:18-CV-00299 (KAD) |
|    *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| J.H.O.C., INC., *d/b/a* PREMIER TRANSPORTATION | ) ) | |
|    *Defendant*. | ) | JUNE 24, 2019 |

**MEMORANDUM OF DECISION**

Kari A. Dooley, United States District Judge

This case arises out of the termination of plaintiff Scott Monroe from his employment as a truck driver for defendant J.H.O.C., Inc., d/b/a Premier Transportation ("Premier"). The operative complaint contains a single claim under the anti-retaliation provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. Premier has moved for summary judgment arguing that Monroe cannot establish that he engaged in a protected activity under the FLSA. For the reasons set forth below, Premier's motion for summary judgment is GRANTED.

**Facts[1]**

In June 2009, Monroe was hired as a truck driver for Premier. (Def.'s SMF at ¶ 2.) During the relevant period, Premier paid truck drivers $0.41 per mile plus additional compensation amounts, including detention pay. (*Id.* at ¶ 4.) Detention pay is compensation for the time a driver is detained at a customer shop in excess of the allotted two-hour delivery window. (*See id.* at ¶ 5.) Premier paid detention pay at a rate of $5 for every fifteen minutes of excess detention, and detention pay comprises "a very small component of a driver's total compensation." (*Id.*) To

---

[1] The relevant facts are taken from the Defendant's Local Rule 56(a)(1) Statement ("Def.'s SMF"); (ECF No. 41); and attached exhibits; (ECF Nos. 39-2 – 39–6); and the Plaintiff's Local Rule 56(a)(2) Statement ("Plf.'s SMF"); (ECF No. 44-2); and attached exhibits; (ECF No. 44–4 – 44–10).

receive detention pay, Monroe, like all drivers, was required to: (1) record his arrival and departure times in the electronic log, (2) call in and report an interruption of service to the dispatcher, and (3) submit a completed Unloading Detention Time form. (*Id.* at ¶ 7.)

Throughout his employment with Premier, Monroe would occasionally notice discrepancies in his detention pay. (Def.'s Ex. C, Monroe Depo. at 34, 37.) Sometimes he would ignore the issue if the discrepancy was very small, *e.g.*, $5. (*Id.* at 44–45.) Other times, he would report the missing detention pay to his dispatcher, and Premier would resolve the issue. (*Id.* at 43, 66, 112–113.)

In December 2015, Monroe complained to his dispatcher, Daniel Gardiner, that his detention time had not been recorded accurately again and, therefore, he was not paid for all of the detention time that he recently worked. (Def.'s SMF at ¶¶ 8–11.) Although Monroe cannot recall the specific dates on which he complained to Gardiner, or whether he made them over the phone or in person, he recalls making oral complaints to Gardiner on one to three occasions in December 2015. (*Id.* at ¶ 10.) All of his complaints were something to the effect of, "Hey, I didn't get paid for my detention time again." (*Id.* at ¶ 12.) Premier subsequently investigated these complaints and either showed Monroe why detention pay was not due or paid any amounts due and owing. (*Id.* at ¶ 13.)

In January 2015, Monroe failed to appear for a random drug and alcohol test mandated by the United States Department of Transportation.[2] (*Id.* at ¶ 17.) Thereafter, Monroe was terminated from his employment with Premier.

In the operative complaint, Monroe contends that Premier fired him in retaliation for his complaints about the discrepancies in his detention pay, not because of his failure to appear for the

---

[2] The factual circumstances surrounding the missed test are in dispute but resolving the dispute is unnecessary to the Court's decision. The facts that are germane to this decision are undisputed.

random drug and alcohol test.[3] Premier has moved for summary judgment arguing that there is no issue of material fact that Monroe did not engage in protected activity under the FLSA and Premiere is therefore entitled to judgment as a matter of law.

**Standard of Review**

The standard under which the Court reviews motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Significantly, the inquiry being conducted by the court when reviewing of a motion for summary judgment focuses on "whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250. As a result, the moving party satisfies his burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case" at trial. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks omitted). Once the movant meets his burden, the nonmoving party must set forth "'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his

---

[3] Although Monroe alleged broadly in his complaint that he was retaliated against for "notifying the defendant that he was not having all his work time documented and that he was not being paid wages for the time he worked"; (Amended Compl. at ¶ 41); it is undisputed at this stage that all of Monroe's complaints concerned discrepancies in his detention pay only; (Def.'s SMF at ¶ 11).

3

pleading" to establish the existence of a disputed fact. *Id.*; *accord Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted; internal quotation marks omitted). Nor will wholly implausible claims or bald assertions that are unsupported by evidence. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian,* 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir. 2003)). "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).

**Discussion**

The "primary remedial purpose [of the FLSA is] to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees." *Ortiz v. My Belly's Playlist LLC*, 283 F. Supp. 3d 125, 126 (S.D.N.Y. 2017) (quoting *Cheeks v. Freeport Pancake House Inc.*, 796 F.3d 199, 207 (2d Cir. 2015)). To that end, the FLSA "sets forth employment rules concerning minimum wages, maximum hours, and overtime pay." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 4 (2011). Importantly, "[t]he FLSA statute

requires payment of minimum wages and overtime wages only, therefore, the FLSA is unavailing where wages do not fall below the statutory minimum and hours do not rise above the overtime threshold." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) (citations omitted); *see also Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113–14 (2d Cir. 2013).

The FLSA also contains an anti-retaliation provision that forbids employers from discharging or discriminating "against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the FLSA. 29 U.S.C. § 215(a)(3). A plaintiff establishes "a *prima facie* case of retaliation by showing (1) participation in protected activity known to the defendant, i.e. the filing of a complaint under or in relation to the FLSA; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010).

Here, Premier challenges only whether Monroe can establish that he engaged in protected activity.[4] The determination of whether a plaintiff engaged in a protected activity under the FLSA involves two discrete inquiries. The Court must determine whether the plaintiff "filed" a complaint within the meaning of the FLSA and whether that complaint was "under or related to" the FLSA. 29 U.S.C. § 215(a)(3). Complaints lodged on matters not governed by the FLSA, including contractual disputes, cannot be the basis of a retaliation claim thereunder. *Dunn v. Sederakis*, 143 F. Supp. 3d 102, 111–12 (S.D.N.Y. 2015) ("under settled law, the FLSA neither converts an

---

[4] In his opposition to Premier's motion for summary judgment, Monroe addressed his ability to prove the other elements of a *prima facie* retaliation case. Because the Court concludes that Monroe cannot meet his burden of proof with respect to the first element, it need not address Monroe's ability to prove the other elements of his claim.

5

employer's contract breach into a violation of federal law, nor generally federalizes disputes between employers and employees").

The Court takes up the second issue first. Premier argues that Monroe's complaints to his dispatcher regarding the miscalculation of his detention pay were not "under or in relation to" the FLSA because detention pay does not implicate minimum wage.[5] Monroe responds that detention pay is a component of minimum wage for truck drivers because work performed during the detention period qualifies as "hours worked" under Department of Labor regulations. Thus, he argues, if he was not paid for the time during which he was entitled to detention pay, he necessarily did not receive a minimum wage for those hours.

Monroe's argument ignores the reality of his pay structure. Monroe was not an hourly wage earner. As an "over the road" truck driver, he was paid principally based upon miles travelled. If he was detained at a customer for more than two hours, he could also earn additional compensation in the form detention pay if he followed the procedures put in place for recording and documenting excessive detention periods. It is undisputed that this detention pay is a "very small component of a driver's total compensation." (Def.'s SMF at ¶ 6.) Indeed, the amount of detention pay in dispute in December 2015 was a mere $90. There is also no evidence that Monroe's paycheck ever reflected below minimum wage earnings. Thus, the mere fact that Monroe's detention pay might have been miscalculated does not mean that Premier did not pay him minimum wage for the hours he worked as required under the FLSA. Accordingly, Monroe's complaints to his dispatcher regarding the accuracy of his detention pay are best viewed as complaints about his right under the terms of his employment to additional compensation for

---

[5] Monroe does not dispute that his position with Premier is exempt from the FLSA's overtime provisions. *See* 29 U.S.C. § 213(b)(1) (exempting from the provisions of § 207 "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service").

excessive detention periods, not his statutory right to minimum wage. Because the FLSA "requires payment of minimum wages and overtime wages only"; *Nakahata*, 723 F.3d at 201; Monroe's complaints about detention pay were not under or related to the FLSA.

Alternatively, Monroe contends that even if the FLSA is not implicated by his claim regarding detention pay, he can still bring a retaliation claim if his complaints were made in good faith. Monroe is correct that a plaintiff does not have to prove an actual FLSA violation in order to state a retaliation claim. *Marcotte v. City of Rochester*, 677 Fed. Appx. 723, 726 (2d Cir. 2017) (summary order) (citing *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)). But if a plaintiff cannot prove an actual violation, he "must show that . . . 'a reasonable employer' could find that [his] complaint would fall under the scope of the FLSA's protection." *Marcotte*, 677 Fed. Appx. at 726. This question dovetails with the first discreet inquiry discussed above — whether Monroe "filed" a complaint within the meaning of the FLSA.

Although it was once the rule of this Circuit that a plaintiff must have filed a formal complaint to state a retaliation claim under the FLSA; *Lambert v. Genesee Hosp.*, 10 F.3d 46, 55 (2d Cir. 1993); the Supreme Court abrogated this rule in *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 4 (2011). There, the Supreme Court held that an employee may premise an anti-retaliation claim on an oral complaint made to an employer so long as the complaint is "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the [FSLA] and a call for their protection." *Katsen*, 563 U.S. at 14; *accord Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 106–107 (2d Cir. 2015). This rule "contemplates some degree of formality" in the oral complaint such that "the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns." *Katsen*, 563 U.S. at 14.

7

Since *Kasten*, our courts have developed some guidance concerning the level of formality or specificity necessary for an oral complaint to be considered "filed" within the meaning of § 215. When an employee explicitly invokes the employer's obligations under the FLSA, that is sufficient to meet the formality requirement of *Katsen*. *E.g.*, *Trowbridge v. Wernicki*, No. 3:13-cv-01797 (JAM), 2015 WL 3746346, at *5 (D. Conn. June 15, 2015). Similarly, an employee's complaints about an employer's failure to pay wages protected by the FLSA when coupled with references to the potential illegality of the employer's conduct are likely sufficient to meet the FLSA's filing requirement. *E.g.*, *Brown v. Hearst Corp.*, No. 3:14-cv-01220-VLB, 2015 WL 5010551, at *1, *4 (D. Conn. Aug. 24, 2015) (denying motion to dismiss FLSA retaliation claims where plaintiff alleged that she "repeatedly told Defendants . . . that their failure to pay her overtime compensation was illegal"); *see Corpes v. Walsh Constr. Co.*, 130 F. Supp. 3d 638, 641–42 (D. Conn. 2015) (noting that allegation that employee complained to employer that coworkers were "often not paid overtime" and "questioned the legality" of employer's practices would likely be sufficient to state FLSA retaliation claim).

In contrast, mere grumblings about an employer's payroll practices are insufficient to constitute a "filed" complaint. *Greathouse*, 784 F.3d at 116. Similarly, complaints about discrepancies in pay or an inability to reconcile pay stubs have often been deemed insufficient to put the employer on notice of a claimed FLSA violation. *E.g.*, *Jeanty v. Newburgh Beacon Bus Corp.*, No. 17-cv-09175 (CS), 2018 WL 6047832, at *11 (S.D.N.Y. Nov. 19, 2018) (holding that oral complaints about pay stubs "only put NBBC on notice that Plaintiff believed he had not been paid what his employer had promised, but that is not enough to assert an FLSA violation"); *Watkins v. First Student, Inc.*, No. 17-cv-01519, 2018 WL 1135480, at *10 (S.D.N.Y. Feb. 28, 2018) (approaching employer regarding discrepancy in overtime pay or inability to reconcile pay stubs

insufficient to put employer on notice that employee claimed FLSA violation); *Baguidy v. Boro Transit Inc.*, 283 F. Supp. 3d 14, 31 (E.D.N.Y. 2017) (dismissing FLSA retaliation claim where plaintiff did not allege that "he provided the payroll manager with sufficient information to understand that [he] was complaining of anything more than a clerical error in his paycheck"), *appeal dismissed* (Dec. 14, 2017); *Pierre v. Air Serv Sec.*, No. 14-cv-05915, 2016 WL 11396816, at *12 (E.D.N.Y. July 28, 2016) (holding that plaintiff's complaints that "his pay check was always short" and that he was owed overtime pay did not constitute invocation of rights under FLSA and thus are not protected activity), *report and recommendation adopted*, 2016 WL 5136256 (E.D.N.Y. Sept. 21, 2016); *Dunn v. Sederakis*, 143 F. Supp. 3d 102, 113 (S.D.N.Y. 2015) (holding plaintiff did not adequately invoke FLSA where there was "no basis for the listener to infer that Dunn's opaque and unexplicated reference to 'overtime' was meant to claim a violation of the FLSA," particularly where this grievance was made in the context of "a litany of complaints that plainly concerned non-FLSA matters").

Here, Monroe complained to his dispatcher on at least one and perhaps as many as three occasions that his detention pay calculation was inaccurate. He does not recall the exact number of complaints, when they were made, whether they were in person or over the telephone, or precisely what he said. There is no evidence, however, that Monroe ever complained that Premier's practices with respect to his detention pay violated the FLSA or were otherwise illegal. It is further undisputed that Monroe had similar issues with his detention pay during his six and a half years of employment, and Premier resolved any discrepancies he found as necessary, including the discrepancies identified in December 2015. Finally, as noted, the payment of detention pay does not implicate whether Monroe would be paid minimum wage for the period in question as his pay rate was well above minimum wage. Under these circumstances and the

applicable law of this Circuit, Monroe's complaints were not "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the [FLSA] and a call for their protection." *Kasten*, 563 U.S. at 14. When confronted with Monroe's December 2015 complaints, a reasonable employer would likely have viewed them simply as attempts to correct a discrete pay discrepancy issue, not accusations that Premier was violating the FLSA or otherwise engaging in illegal employment practices.

Accordingly, there is no genuine issue of material fact that Monroe did not engage in protected activity under the FLSA. Monroe cannot therefore make out a *prima facie* case of retaliation and Premier is entitled to judgment as a matter of law.

**Conclusion**

For the reasons set forth above, Premier's Motion for Summary Judgment (ECF No. 39) is GRANTED. The Clerk of Court is directed to close this matter.

**SO ORDERED** at Bridgeport, Connecticut, this 24th day of June 2019.

　　　　　　　　　　　　　　　　　　　　 */s/ Kari A. Dooley*　　　　　　　
　　　　　　　　　　　　　　　　　　　　KARI A. DOOLEY
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE